**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 20-21979-CIV-ALTONAGA**

MIKE ELBERT NEAL,

    Plaintiff,
v.

UNIT OFFICER DELMAN
LUMPKIN, *et al.*,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** is before the Court on Plaintiff's Second Amended Complaint ("SAC") [ECF No. 73], entered on the docket on January 24, 2023. Upon screening, the Court concludes the case may proceed in part.

***Preliminary Matters.*** Plaintiff's First Amended Complaint ("FAC") [ECF No. 61] was entered on December 28, 2022. In its January 3, 2023 Order [ECF No. 62], the Court dismissed the FAC without prejudice, explaining it was a shotgun pleading that violated the Federal Rules of Civil Procedure. (*See id.* 1–4). The Court assumes the reader's familiarity with the January 3, 2023 Order. The Court now assesses the SAC.

***Count One: Failure to Process Grievances***

Liberally construed, *see Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008), Plaintiff claims deliberate indifference resulting from Defendants Lawrence, Hamilton, and Guerra's failure to file Plaintiff's grievances against Defendant Lumpkin and thereby protect Plaintiff. (*See* SAC 15–16). To constitute deliberate indifference resulting from a failure to protect an inmate, "the prison official must have subjective knowledge of the risk of serious harm, and must nevertheless fail to reasonably respond to the risk." *Murphy v. Turpin*, 159 F. App'x 945, 947–48

(11th Cir. 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994) (emphasis omitted)). A prison official must also have a sufficiently culpable state of mind to be deliberately indifferent. *See Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (citations omitted).

Plaintiff brings this claim against Lawrence, Hamilton, and Guerra[1] in their individual capacities. (*See* SAC ¶ 140). Plaintiff alleges he gave Guerra multiple grievance complaints against Lumpkin during April 2019. (*See id*. ¶ 143). Plaintiff further alleges that on April 9, 2019, he gave Lawrence and Hamilton grievances against Lumpkin, but Lawrence and Hamilton "maliciously failed to process" the grievances. (*Id*. ¶ 145). Plaintiff alleges that Lawrence personally assured him she would process his grievances. (*See id*. ¶ 29). Plaintiff alleges that instead of processing the grievances, Lawrence maliciously gave them to Hamilton, who then failed to process them and ignored Plaintiff's subsequent requests for carbon copies. (*See id*. ¶¶ 30–31).

Plaintiff does not allege that Lawrence, Hamilton, and Guerra had a subjective knowledge of the risk of serious harm. Plaintiff alleges he gave them grievances against Lumpkin but does not allege that he told any of them about Lumpkin's threats or otherwise made them aware of the contents of the grievances. (*See id*. ¶¶ 143–45). Therefore, Count One is due to be dismissed against Lawrence, Hamilton, and Guerra for failure to state a claim for relief.

### *Count Two: Retaliation*

"The First Amendment prohibits prison officials from retaliating against prisoners for exercising their right of free speech by filing lawsuits or grievances." *Jacoby v. Mack*, 755 F. App'x 888, 902 (11th Cir. 2018) (citing *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011); other citation omitted). To prevail on a retaliation claim, an inmate must establish that: "(1) his

---

[1] Correctional Counselor John Guerra was omitted from the FAC. (*Compare* SAC *with* FAC). The named Defendants are otherwise identical. (*See id*.).

speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." *O'Bryant*, 637 F.3d 1212 (alterations in original; citation and quotation marks omitted).

Plaintiff alleges that on April 11, 2019, Lumpkin "specifically told Plaintiff he had seen those grievance complaints filed against him." (SAC ¶ 155). Liberally construed, *see Douglas*, 535 F.3d at 1320, Plaintiff alleges that the grievances led to Lumpkin's retaliatory beating of Plaintiff on April 12, 2019. (*See* SAC ¶¶ 40–48, 155–156, 160). These allegations support a reasonable inference that Lumpkin's retaliatory action — the April 12, 2019 beating — resulted from the protected speech — Plaintiff's grievances. Therefore, Plaintiff's retaliation claim may proceed against Lumpkin in his individual capacity.

### *Count Three: Excessive Force*

Because Plaintiff was a pretrial detainee at the time of the alleged incident, his excessive force claim is governed by the Fourteenth Amendment to the United States Constitution. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Under the Fourteenth Amendment, pretrial detainees raising excessive force claims need not prove an officer's subjective intent to harm, but instead need show only "that the force purposely or knowingly used against [them] was objectively unreasonable." *Id.* at 396–97 (alteration added). Objective reasonableness, for the purpose of deciding a pretrial detainee's Fourteenth Amendment excessive force claim, turns on the facts and circumstances of each case. *See Patel v. Lanier Cnty.*, 969 F.3d 1173, 1181–82 (11th Cir. 2020). Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to limit the amount of

force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was resisting. *See id.* at 1182 (quoting *Kingsley*, 576 U.S. at 397).

Plaintiff brings this claim against Lumpkin in his individual capacity. (*See* SAC ¶ 152). Plaintiff alleges that Lumpkin "assaulted Plaintiff with 13 hard punches despite the fact that he knew and did not care Plaintiff was wearing handcuffs and defenseless and could not [pose a] threat to him." (*Id.* ¶ 48 (alteration added)). Plaintiff alleges that after the beating, he was transferred to the medical clinic for emergency medical treatment for injuries he sustained to his face, head, neck, back, left leg, and left ear. (*See id*. ¶ 52). He further alleges chronic injuries, including damage to his left knee, torn rotator cuffs in both shoulders, and permanent lower back injury. (*See id*. ¶ 55). These facts support a reasonable inference that Lumpkin purposely or knowingly used excessive force against Plaintiff and that such force was objectively unreasonable, in violation of the Fourteenth Amendment. Plaintiff's excessive force claim may proceed against Lumpkin in his individual capacity.

### Count Four: Failure to Intervene

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Crenshaw v. Lister*, 556 F.3d 1283, 1293–94 (11th Cir. 2009) (alteration added; citation and quotation marks omitted). The Eleventh Circuit has clarified that liability for failing to intervene to stop the use of excessive force only arises when the officer has observed the excessive force and had both the time and ability to intervene in the purported use of excessive force by a fellow officer. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000).

Plaintiff brings this claim against Frade in his individual capacity. (*See* SAC ¶ 175). Plaintiff alleges that Frade stood by during the April 12, 2019 beating while "Defendant Lumpkin

repeatedly punched Plaintiff more than 12 times in the face, head, shoulder, ear, [and] back." *(Id.* ¶¶ 179–80 (alteration added)). Liberally construed, *see Douglas*, 535 F.3d at 1320, Plaintiff alleges that Frade had the time and opportunity to intervene to stop the use of excessive force by Lumpkin but failed to do so. (*See id.* ¶¶ 180–81). These allegations support a reasonable inference that Frade failed to intervene in Lumpkin's use of excessive force. Therefore, Plaintiff's failure-to-intervene claim may proceed against Frade in his individual capacity.

### Count Five: Failure to Protect

To constitute deliberate indifference resulting from a failure to protect an inmate, the prison official must have subjective knowledge of the risk of serious harm and nevertheless fail to respond to the risk. *See Murphy*, 159 F. App'x at 947–48 (citation omitted). A prison official must also have a sufficiently culpable state of mind to be deliberately indifferent. *See Carter*, 352 F.3d at 1349 (citations omitted).

Plaintiff brings this claim against Lawrence and Hamilton in their individual capacities. (*See* SAC ¶ 187). Plaintiff alleges that on April 9, 2019, he put Lawrence and Hamilton on notice, verbally and in written grievances, of Lumpkin's threats to "cause physical bodily harm" against him. (*Id.* ¶ 190). Plaintiff alleges that despite this knowledge, Lawrence and Hamilton disregarded the risk and failed to take reasonable measures to protect him. (*See id.* ¶ 191). These allegations support a reasonable inference that Lawrence and Hamilton were deliberately indifferent in failing to protect Plaintiff. Plaintiff's failure-to-protect claim may proceed against Lawrence and Hamilton in their individual capacities.

### Count Six: Malicious Prosecution

In an action for malicious prosecution, the plaintiff must allege: "(1) the elements of the common law tort of malicious prosecution; *and* (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th

5

Cir. 2010) (emphasis in original; citations omitted). "As to the first prong, the constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Id.* at 1256 (citation, quotation marks, and footnote call number omitted omitted). "As to the second prong, it is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment." *Id.* (citations omitted). "[T]he existence of probable cause defeats a [section] 1983 malicious prosecution claim." *Id.* (alterations added; citations omitted).

The SAC, like its predecessor, accuses *all* Defendants of malicious prosecution in Count Six. (*Compare* SAC 16 *with* FAC 21). The pleading deficiencies persist, as Plaintiff fails to connect Defendants to this claim. It remains unclear, for example, how Frade, a correctional officer who Plaintiff accuses of failing to protect Plaintiff from excessive force, committed the tort of malicious prosecution. (*See* SAC ¶ 179). In sum, Plaintiff continues to lump all Defendants together in Count Six, thereby failing to put Defendants on notice of the claim against them and the grounds upon which they rest. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015) (footnote call number omitted). Therefore, Plaintiff's malicious prosecution claim against all Defendants is due to be dismissed as a shotgun pleading that violates the Federal Rules of Civil Procedure.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Count One: Plaintiff's deliberate indifference claim against Lawrence, Hamilton, and Guerra is **DISMISSED**.

2. Count Two: Plaintiff's retaliation claim against Lumpkin in his individual capacity shall **PROCEED**.

3. Count Three: Plaintiff's excessive force claim against Lumpkin in his individual capacity shall **PROCEED**.

4. Count Four: Plaintiff's failure-to-intervene claim against Frade in his individual capacity shall **PROCEED**.

5. Count Five: Plaintiff's failure-to-protect claim against Lawrence in her individual capacity and Hamilton in his individual capacity shall **PROCEED**.

6. Count Six: Plaintiff's malicious prosecution claim against all Defendants is **DISMISSED**.

The Clerk shall **REOPEN** the case. Defendants shall file their response to the Second Amended Complaint by **February 10, 2023**. The parties shall file a joint scheduling report by **February 15, 2023**.

**DONE AND ORDERED** in Miami, Florida, this 27th day of January, 2023.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: Plaintiff, *pro se*
counsel of record